UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COREY SIMMONS,

                              Plaintiff,

    vs.                                              9:11-CV-753
                                                     (DNH/ATB)

NORMAN BEZIO, et al.,

                              Defendants.
_____

COREY SIMMONS, Plaintiff pro se
KRISTA A. ROCK,
Ass't Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT RECOMMENDATION

This matter was referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable David N. Hurd, United States District Judge. In this civil rights complaint, Plaintiff alleges that defendants violated a number of his Constitutional rights while he was incarcerated at Great Meadow Correctional Facility (Great Meadow). (Dkt. No. 1). Plaintiff seeks significant monetary relief. (Dkt. No. 1 ¶¶ 34–37).

Defendants filed a motion for summary judgment on October 20, 2011, for, inter alia, failure to exhaust administrative remedies. (Dkt. No. 21). Defendants filed a letter motion on November 8, 2011, seeking to add failure to prosecute as a ground for dismissal, because plaintiff appeared to have failed to update his address with the court. (Dkt. No. 25). Plaintiff notified the court of his address on December 27,

2011.[1] (Dkt. No. 26). This court, in a text order on December 27, 2011, directed the clerk to serve plaintiff with both of defendants' motions (Dkt. Nos. 21, 25) at his new address. Plaintiff filed a letter request on February 24, 2012, seeking an extension of time to file a response to defendants' motions. (Dkt. No. 27). In a text order dated February 24, 2012, this court granted plaintiff's request, and extended the deadline to March 30, 2012. As of the date of this order, plaintiff has failed to respond or file any additional argument. For the following reasons, the court recommends granting defendants' summary judgment and dismissing the complaint in its entirety.

## DISCUSSION

**I.   Facts**

Plaintiff alleges that on February 13, 2011, defendant Taylor led plaintiff up a stairwell to the upper tier in the B-block. (Compl. ¶¶11–12). Plaintiff alleges that defendant Taylor was aware[2] that the railing in the stairwell was unsafe. *Id*. Plaintiff fell and suffered a "distal-fibular fracture." (Compl. ¶¶ 12–14). Plaintiff alleges that defendant Taylor did not help him, failed to call for medical assistance, and ordered plaintiff to walk on his injured ankle, despite plaintiff's extreme pain. (Compl. ¶¶

---

[1] Because plaintiff updated his address, this court will recommend denying defendants' letter motion (Dkt. No. 25) as moot.

[2] Plaintiff makes numerous allegations that defendants were "aware" of a dangerous condition and failed to remedy the condition. To the extent plaintiff is making claims based on negligence, those claims should be dismissed, as it is well-settled that claims based on negligence cannot be brought under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Morales v. New York State Dep't of Corrs.*, 842 F.2d 27, 30 (2d Cir. 1980); *Abdul-Matiyn v. New York State Dep't of Correctional Servs.*, 871 F.Supp. 1542, 1547 (N.D.N.Y. 1994) (citing *Morales*).

2

12–15, 20–21).

Plaintiff alleges that defendant Bezio "deliberately ignore[ed]" complaints to fix the railing and stair, and "sanctioned" the actions of defendant Taylor.  (Compl. ¶ 15, 22).  Plaintiff alleges that defendant Kelly was also aware of the damaged railing and stair.  (Compl. ¶ 25).  Plaintiff alleges that defendant Lindstrand had "full knowledge" that plaintiff and "other black/latin pris[o]ners" wanted the railing and stair fixed, and defendant Lindstrand also "sanctioned" the actions of defendant Taylor.  (Compl. ¶ 16, 26–27).

Plaintiff alleges that defendant Woodworth denied plaintiff access to the courts by "deliberately preventing him [from] exhausting the most serious grievances against his fellow employees," by destroying grievances or returning them as "untimely." (Compl. ¶ 17, 29–30).  Plaintiff alleges that defendant Woodworth also encouraged other guards to harass and retaliate against plaintiff.  (Comp. ¶ 30).

Plaintiff also alleges that defendants conspired to prevent the railing and stair from being repaired as a "collective effort to cause black/latino prisoners to keep being hurt."  (Compl. ¶ 32).  Plaintiff alleges that defendants Bezio, Kelly, Lindstrand, and Woodworth conspired by making statements that defendant Taylor did not cause plaintiff's injuries in order to "sabotage" a grievance.[3]  (Compl. ¶ 33).

---

[3] Plaintiff does not clarify what this grievance contained, and there is no record that plaintiff filed any grievance related to a collective effort to injure black and latino prisoners, as discussed below.

3

## II. <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ['material'] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States*

4

*v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272. "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.     Exhaustion of Administrative Remedies

### A.     Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison

5

administrative proceedings. *Id.* at 675.

The exhaustion requirement does not apply to former inmates who commence an action after their release from custody. *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999). However, the exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003). Dismissal is appropriate for failure to exhaust when a prisoner was incarcerated for "several months after the onset of the conditions that gave rise to his complaints and prior to his release." *Berry*, 366 F.3d at 88.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a

prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[4] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion

---

[4] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

7

requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).[5] As discussed below, this court finds that plaintiff has not shown that the exhaustion requirement should be excused, and thus, plaintiff's case should be dismissed.

**B.    Application**

Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not seek review with respect to any grievances alleging that: 1) defendants

---

[5] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

8

were aware that the stairway in B-block was unsafe and failed to remedy the condition, 2) defendant Taylor directed plaintiff to use the allegedly unsafe stairwell, 3) defendants Taylor, Bezio, and Lindstrand were deliberately indifferent to plaintiff's serious medical needs on February 13, 2011, 4) defendant Woodworth denied plaintiff access to the courts and prevented plaintiff from exhausting his administrative remedies, 5) defendant Woodworth retaliated against plaintiff, and 6) defendants conspired to injure black and latino inmates. (Defs.' Stmt. Pursuant to Rule 7.1(a)(3) ¶ 11). Attached to defendants' summary judgment motion is the declaration of Jeffery Hale (Hale Decl.), the Assistant Director of the Inmate Grievance Program with the New York State Department of Corrections and Community Supervision (DOCCS). (Dkt. No. 21-4). Assistant Director Hale affirmed that plaintiff appealed two grievances to the CORC. (Hale Decl. ¶ 11). These two grievances pertain to the medical care plaintiff received after his surgery related to the injury from his fall in this incident. (*See* Exs. A–B to Hale Decl.).

Plaintiff was apparently released from custody on August 26, 2011. (Defs.' Letter M., Dkt. No. 25). Plaintiff's fall was on February 13, 2011, and he underwent surgery on February 16, 2011. (Compl. ¶ 12, Exs. A–B to Hale Decl.). Plaintiff filed two grievances on March 21, 2011. (Exs. A–B to Hale Decl.). Plaintiff's cast was removed on May 9, 2011. (Exs. A–B to Hale Decl.). Plaintiff filed this case on July 5, 2011.

In *Berry*, the plaintiff failed to exhaust his administrative remedies to alleged mistreatment occurring three and nine months prior to his release, and the Second Circuit

9

found that he "could have exhausted remedies for his March and October 1998 grievances prior to his first release in January 1999." *Berry*, 366 F.3d at 88. Here, plaintiff had six months from his fall to when he was released in which to exhaust his administrative remedies.

Applying the three-step *Hemphill* test, it is clear that the grievance program was available to plaintiff. Plaintiff filed two grievances related to the pain medication he was prescribed in March 2011, which he subsequently appealed to the CORC. (Ex. A–B to Hale Decl.).

Defendants may "forfeit the affirmative defense of non-exhaustion . . . [if] defendants' own actions inhibit[ed] the inmate's exhaustion of remedies . . . ." *Chavis v. Goord*, 333 F. App'x at 641 (citations omitted); *see, e.g.*, *Jacoby v. Phelix*, No. 9:07-CV-872 (DNH/ATB), 2010 U.S. Dist. LEXIS 44222, at *26–28, 2010 WL 1839299, at *8–9 (N.D.N.Y. Mar. 31, 2010) (summary judgment denied where issues of fact remained as to whether plaintiff was threatened by defendants into withdrawing his grievance) (report-recommendation), *adopted*, 2010 U.S. Dist. LEXIS 44201, 2010 WL 1839264 (N.D.N.Y. May 6, 2010)).

Apart from the conclusory allegations in his complaint, plaintiff has failed to establish anything the indicates that defendants prevented him from filing grievances related to the allegations in this complaint. The fact that he filed two grievances related to the pain medication he was prescribed as his injury healed further indicates that the

grievance process was open to him, and that he understood how to use it.

Plaintiff received defendants' motion for summary judgment, as evidenced by his request for additional time to respond. (Dkt. No. 27). Defendants' motion for summary judgment included the Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, which stated, "If you do not respond in opposition to the motion, summary judgment, if appropriate, will be entered against you." (Dkt. No. 21 at 3). Plaintiff's failure to respond to defendants' Statement of Material Facts regarding his failure to seek review relating to grievances relevant to the instant claims provides further support for the court's conclusion that there is no factual support for the application of any of the Hemphill exceptions to the exhaustion requirement. *See, e.g., Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (even a pro se litigant is not excused "from following the procedural formalities of summary judgment[,]" including those involving statements of material fact).

Even applying the three-step *Hemphill* inquiry, no valid explanation exists that would excuse plaintiff's failure to exhaust. No rational fact finder could determine that Plaintiff exhausted his administrative remedies, or was deterred from doing so by defendants' actions or any DOCCS employee.[6] Accordingly, it is recommended that

---

[6] *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus

11

summary judgment be **granted** as to all his claims.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' letter motion seeking summary judgment (Dkt. No. 25) based on plaintiff's failure to provide his current address to the court be **DENIED AS MOOT**, and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED** and the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 21, 2012

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted). *See also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").